RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 21-5144

JOHN D. HELTON,

*Defendant-Appellant*.

─────────────

Appeal from the United States District Court for the Eastern District of Kentucky at London.
No. 6:19-cr-00041-1—Claria Horn Boom, District Judge.

Decided and Filed:  May 24, 2022

Before:  SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

─────────────

**COUNSEL**

**ON BRIEF:**  Travis A. Rossman, ROSSMAN LAW, PLLC, Barbourville, Kentucky, for Appellant.  Andrew A. Spievack, UNITED STATES ATTORNEY'S OFFICE, Fort Mitchell, Kentucky, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

STRANCH, J., delivered the opinion of the court in which WHITE, J., joined. SUHRHEINRICH, J. (pp. 14–15), delivered a separate opinion concurring in part and dissenting in part.

─────────────

**OPINION**

─────────────

JANE B. STRANCH, Circuit Judge.  John Helton appeals the district court's denial of his motion to suppress and its decision to excuse a juror during trial.  Because the district court

found that the search warrant for Helton's home established both probable cause and nexus to the home, it denied the motion to suppress. The court excused the juror based on concerns that the juror could not set aside her personal knowledge of a trial witness. We find no error in the district court's decision to excuse the juror. We hold that the search warrant did not satisfy constitutional requirements. But because the *Leon* good faith exception to the exclusionary rule applies, we **AFFIRM** the district court's denial of the motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, after going to Helton's home to execute a warrant for his arrest, Knox County Sheriff Deputy Sam Mullins sought a search warrant.

Deputy Mullins wrote the search warrant affidavit, stating only the following:

Affiant has been an officer in the aforementioned agency for a period of 6 years and information and observations contained herein were received and made in his capacity as an officer thereof.

Deputy Sam Mullins had received numerous drug complaints at the above residence that John Helton was selling methamphetamine. A reliable source advised he was at the residence a few days ago when a subject he was with purchased a half pound of methamphetamine. On 06/09/2019 deputies went to the residence of John Helton to execute a warrant. Upon arrival Helton had a clear baggie that appeared to had [sic] residue in it and a sum of US currency in small bills. This deputy has experience and knowledge that there is [sic] illegal narcotics on the property.

Based on this two-paragraph affidavit, a Knox County judge issued a search warrant for Helton's residence.

Upon execution of the search warrant, the deputies found illegal drugs, currency, and multiple firearms. Helton's wife told law enforcement that Helton would take drug-trafficking money to the home of his mother, Patsy Hopkins. On the day Helton's residence was searched, two deputies went to Hopkins' house to secure it while other law enforcement officials obtained a warrant to search her home. When the deputies executed the search warrant, they recovered money, firearms, and drugs from Hopkins' home.

In July 2019, while Helton was in jail on state charges, a federal grand jury indicted him for conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, and being a felon in possession of firearms; a superseding indictment was subsequently issued. In district court, Helton moved to suppress the evidence found pursuant to both search warrants. Concluding that the search warrant affidavit for Helton's house was sufficient to establish probable cause, a magistrate judge recommended that the motion to suppress be denied. The magistrate judge then concluded that the search warrant executed at Patsy Hopkin's house was valid because the search warrant of Helton's house was valid. Helton objected to the recommendations of the magistrate judge, but the district court adopted them.

Helton was tried before a jury in August 2020. Shawna Moore was called as a government witness, and testified that she participated in a controlled purchase of methamphetamine from Helton along with the Kentucky State Police. Moore explained that she communicated with Helton by phone to set up the buy, and then Helton's wife met her at the Trademart Shopping Center to complete the sale.

After Moore's testimony, Juror 191 spoke with the district court. Though she did not know Moore by name, the Juror said she recognized her because Moore was someone that she and her fellow employees at the shopping center would "kind of watch in case she was going to steal." Juror 191 then said, "I don't think that anything like that would affect how I would judge anybody because we're - - based on the evidence, but I did want to let the Court know that I did recognize her from my place of employment."

Juror 191 clarified that she had previously spoken with Moore at that store but had never witnessed, nor was she aware of, Moore ever shoplifting from the Juror's place of work. When asked if she could "set [her] experiences aside and judge [Moore's] credibility based solely on the evidence [she] heard" at trial, Juror 191 responded, "Yes." The Juror was also asked if there was anything regarding her "personal interactions" with Moore, or her other knowledge of Moore that would impact her "fairness and integrity as a juror." Juror 191 responded, "No."

Juror 191 was also asked, "And are you confident that your concerns, or the concerns that your store has had about [Moore's] potential to be stealing, would not in any way color your

evaluation of her testimony?"  She said, "I don't think so.  I mean, it's bad that they steal, but they're not stealing from me."  The court followed up by asking, "based on your interactions with her, or this suspicion that has been there in the past, would you be able to set that aside, or do you believe it would make you believe one side or the other more?"  Juror 191 said, "I don't think so."  Juror 191 also stated that she would "be able to follow [the court's] instructions on how to evaluate this witness's testimony."

The Government moved to strike Juror 191 for cause and Helton opposed the motion. The district court struck Juror 191 on the basis that she personally knew Moore and she had twice responded "I think so" when asked if she could set aside her knowledge of Moore.

The jury found Helton guilty of conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, and being a felon in possession of firearms.  The jury also found after a Phase II trial that Helton's prior conviction qualified to enhance his sentence. The district court sentenced Helton to 264 months of imprisonment.  Helton timely appealed.

## II.  ANALYSIS

Helton presents two arguments on appeal.  First, he contends that the district court's decision should be reversed because the search warrant for his home was unconstitutional. Relatedly, he argues that this court should remand his case for further proceedings to determine whether the search warrant for his mother's home was fruit of the poisonous tree.  Second, he contends that the district court abused its discretion by excusing Juror 191 for cause during trial, and claims that he was prejudiced by Juror 191's excusal.

### A.  The Search Warrants

Helton contends that the search warrant affidavit was not supported by probable cause and did not establish a nexus between his residence and the drug evidence sought.  The Government responds that there was probable cause for the search warrant, and even if probable cause did not exist, the motion to suppress was properly denied because the *Leon* good faith exception applies.

Federal constitutional law applies to a state search warrant that is challenged in federal court. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). When a motion to suppress is denied, we review factual findings for clear error and legal conclusion de novo. *United States v. Prigmore*, 15 F.4th 768, 777 (6th Cir. 2021). Although the evidence is to be reviewed in the light most favorable to a district court's factual determinations, *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020), *cert. denied,* 141 S. Ct. 1395 (2021), when the district court is a reviewing court—as it was here—the district court's legal conclusions are not owed any deference, *Abernathy*, 843 F.3d at 250.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. It also provides that a warrant must have probable cause "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* Probable cause "is not a high bar," *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)), as it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," *id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).

Thus, to show that probable cause supports a search warrant, the officer "must submit an affidavit that 'indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quoting *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009)). The search warrant affidavit must establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). Viewing the search warrant affidavit "under the totality of the circumstances," we examine its "four corners" with "great deference toward" the determination of the judge who issued the search warrant. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

Here, the affidavit requesting the state warrant included only four pieces of information: (1) complaints from anonymous sources, (2) a tip from a source who claimed to have witnessed a drug transaction at Helton's home, (3) Helton having an unknown quantity of small bills and a "clear baggie" with some type of "residue," and (4) Deputy Mullins' "experience and

knowledge."  We consider whether the totality of these four pieces of information supports a finding of probable cause.

When an affidavit relies on information from a confidential source or an anonymous tipster, examining the totality of the circumstances includes examining the "veracity, reliability, and basis of knowledge" of the source.  *Hines*, 885 F.3d at 923 (quoting *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005)); *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).  The veracity, reliability, and basis of knowledge of a source "are not 'separate and independent requirements to be rigidly exacted in every case.'"  *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 230).  If the judge issuing the warrant "can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause."  *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005).  In the alternative, an affidavit that provides "little information concerning an informant's reliability may support a finding of probable cause" when the affidavit contains corroborating information.  *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004).

Regarding the two pieces of information addressing complaints and tips, the affidavit states that there were "numerous drug complaints" that Helton was selling methamphetamine from his home.  As the district court concluded, the affidavit does not explain how many complaints or tips law enforcement received, who made them, or when they were made.  Additionally, because the affidavit does not say, and it is impossible to tell, when the complaints were made, the complaint tips were stale.  *See Abernathy*, 843 F.3d at 250 (explaining that information is stale when it is "impossible to tell from the affidavit when the circumstances giving rise to probable cause occurred" and that the court does not consider stale information).

Regarding the tip from the informant, the affidavit states, "A reliable source advised he was at the residence a few days ago when a subject he was with purchased a half pound of methamphetamine."  To begin, contrary to Helton's argument, the informant's tip being a few days old does not make it stale.  *See United States v. Moore*, 661 F.3d 309, 313 (6th Cir. 2011) (finding a search warrant is not stale when there is a "period of less than five days between the CI's information about the presence of drugs" and the preparation of the warrant).  Next, the affidavit does not say that, or how, the source was known to law enforcement or that the source's

identity was provided to the judge. For "a confidential informant to be deemed 'known,' the affidavit must acknowledge that the police know the informant's identity or that the identity has been disclosed under oath to the issuing judge." *May*, 399 F.3d at 823.**[1]** This affidavit also does not contain any information to show the "veracity" or "reliability" of that source. *Hines*, 885 F.3d at 923 (quoting *May*, 399 F.3d at 822). As to reliability, Deputy Mullins merely asserted that the informant is reliable and did not provide any facts supporting this assertion. Courts do not accept an affiant's unsupported assertion that an informant is reliable. *See United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir. 2000) (en banc). Though the affidavit does reference a basis of the knowledge of the source, it does not provide "substantial supporting evidence" within the affidavit as to the source's reliability. *Dyer*, 580 F.3d at 392.

We have also explained that probable cause is lacking when a warrant is issued based on an affidavit relying on information from an anonymous tip that is sparse in detail and inadequately corroborated by the police. *United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993). Under our precedent, the anonymous complaints and the confidential informant's tip together are not sufficient to establish probable cause because the affidavit lacks the necessary indicia of both veracity and reliability for the tips.

Because the affidavit includes no information to independently assess the reliability of the sources, we review whether the affidavit includes corroboration that supports probable cause. *See Woosley*, 361 F.3d at 927. An anonymous tip's "minimal probative" value can have "an increased level of significance," if it is corroborated. *Helton*, 314 F.3d at 823. "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of

---

**[1]**This case is unlike *May* where "the issuing judge knew that the confidential informant's identity was known to the police because Officer Allen stated in his affidavit that the confidential 'source has furnished information ... for a period of six months and has worked with [Officer Allen] in the investigation of this matter ... [and] has provided assistance in unrelated drug investigation cases.'" 399 F.3d at 824. The affidavit here only said, "A reliable source advised he was at the residence a few days ago when a subject he was with purchased a half pound of methamphetamine." The issue is not that the source is not named in the affidavit, but rather that there is no indication of whether the source is known to law enforcement or the issuing judge, or how the source proved to be "reliable." Contrary to the concurrence/dissent's assertion that an officer's characterization of a tipster as "reliable" is enough to indicate to the court that the officer knew the tipster, Concurrence/Dissenting Op. at 14, our caselaw cited above makes clear that the officer here needed to acknowledge that the police knew the informant's identity or that it was disclosed to the issuing judge and provide facts in the affidavit that support its bald conclusion of reliability.

probable cause, . . . in the absence of any indicia of the informant[s'] reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (alteration in original) (quoting *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)).

Considering both the anonymous complaints and the informant's tip, the district court concluded that probable cause existed on the basis that the anonymous complaints "corroborate—even if only slightly—the 'reliable source's' information." But that analysis is not supported by our precedent. Where, as here, an affidavit lacks indicia of reliability for the tips relied upon, corroboration of those unreliable sources requires independent police corroboration. *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) ("We have previously held that information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information."). This affidavit contains no information that law enforcement undertook the independent corroboration that is necessary when indicia of reliability is absent. The unreliable tip sources, therefore, are of insufficient probative value to support probable cause.

What remains is that while executing an arrest warrant,[2] the deputies found Helton somewhere near his residence with a clear baggie "that appeared to ha[ve] residue in it" and small bills on his person. The residue is wholly unidentified, and the affidavit does not even indicate that Deputy Mullins confirmed the presence of residue, or that the residue, if that is indeed what it was, was field tested. Nor does the affidavit indicate how much money in small bills Helton had—and whether it was several dollar bills or a number of other denominations. The affidavit does not make clear why it would be incriminating to have small bills on one's person. We have warned that one of the dangers of law enforcement's "failure to corroborate all that can be easily corroborated" is that "a warrant will not issue where it should."

---

[2]The affidavit does not describe where police discovered Helton with the clear baggie and small bills. However, the June 9, 2019 arrest report states that, upon execution of the warrant described in the affidavit, police discovered Helton "inside of a out [sic] building." To the extent that Helton's location either materially contributed to or detracted from probable cause, it should have been included in the factual predicate in the affidavit. *See Mays v. City of Dayton*, 134 F.3d 809, 815–16 (6th Cir. 1998).

*Allen*, 211 F.3d at 976.  As described in the warrant, the items found on Helton provide little or no contribution to the probable cause analysis.

Deputy Mullins also included in the affidavit that he has been an officer for six years and that his "experience and knowledge" led him to conclude that illegal drugs were in Helton's home.  Although the judge who issued the search warrant can "give considerable weight to the conclusion of experienced law enforcement officers," *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) (quoting *United States v. Caicedo¸* 85 F.3d 1184, 1192 (1996)), the affidavit says only that Deputy Mullins had worked for the sheriff's department for six years.  It provides no information concerning his training or experience working on drug-related matters.  The affidavit provides little information about Deputy Mullin's experience for the issuing judge to consider.

The search warrant affidavit must also establish a nexus between Helton's home and the evidence of drug trafficking.  *Carpenter*, 360 F.3d at 594.  While we have said that evidence of drug dealing "is likely to be found where the dealers live" in cases involving drug dealers, *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)), we have "never held . . . that a suspect's 'status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Id.* (quoting *Frazier*, 423 F.3d at 533).  There must be "facts showing that the residence [has] been used in drug trafficking." *Id.*  And there are limits to the inferences that the issuing judge may draw to reach the conclusion that there is a nexus that supports probable cause.  We have addressed how an inference may be used to gap-fill a warrant affidavit in the parallel good faith exception context.  In *United States v. Laughton*, we noted the difference between drawing a single inference "based on a great number of details set out in the affidavit" and situations in which filling the gaps "would require a number of inferences, even inferences drawn upon inferences," which would not "support objectively reasonable reliance" by an executing officer. 409 F.3d 744, 750 (6th Cir. 2005).

Here, very few details are set out in the affidavit.  The only evidence in the affidavit linking drug trafficking to Helton's home is composed of stale, anonymous complaints and an unnamed source lacking support for veracity or reliability, all without any independent police

corroboration. Helton's presence somewhere near his home with a "clear baggie" with some type of "residue" in it and money in small bills also fails to connect his *home* with drug trafficking and as explained, the residue is unidentified and having small bills is not incriminating. The affidavit does not establish a nexus between Helton's residence and the evidence of drug trafficking that Deputy Mullins sought. Thus, the affidavit did not establish probable cause to search Helton's home.

We turn to the closer question of whether the good faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984) saves the search. The exclusionary rule prohibits the Government from using "evidence obtained in violation of the Fourth Amendment" against a defendant at trial. *Brown*, 828 F.3d at 385 (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). As to suppressing the evidence, however, the *Leon* Court held that if "the evidence was 'obtained in objectively reasonable reliance' on the 'subsequently invalidated search warrant,' however, it should not be suppressed." 468 U.S. at 922. *Leon* identified four circumstances where an officer's reliance would not be objectively reasonable:

> (1) the magistrate was "misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) the magistrate "abandoned his judicial role" or neutrality; (3) the warrant was "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable; or (4) the warrant was so "facially deficient" that it could not reasonably be presumed valid.

*United States v. McClain*, 444 F.3d 556, 564–65 (6th Cir. 2005) (quoting *Leon*, 468 U.S. at 923). The third circumstance is known as a "bare bones" affidavit. *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020).[3] Helton argues that the good faith exception does not save this search because the affidavit is "bare-bones." "A bare-bones affidavit should not be confused with one that lacks probable cause." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017). This is because "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding." *Id.*

---

[3]The concurrence/dissent relies in part on this opinion's analysis of the good faith exception to support its conclusion that probable cause existed for the search warrant. Concurrence/Dissenting Op. at 14–15. But the good faith exception is just that—an exception to the requirements of the probable cause standard. As shown above, the officer's objectively reasonable reliance on the court issued warrant that justifies the good faith exception here does not justify finding that the affidavit seeking the search warrant was adequate to establish probable cause.

We have recognized that if there is a minimally sufficient nexus between the place to be searched and evidence sought, the good faith exception may apply. *Id.* at 496–97. The minimally sufficient nexus standard is a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause." *United States v. Fitzgerald*, 754 F. App'x 351, 362 (6th Cir. 2018) (quoting *Frazier*, 423 F.3d at 536). To avoid the "bare bones" label, the affidavit must contain "more than 'suspicions, or conclusions'"; it must provide "some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc) (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)); *United States v. Baker*, 976 F.3d 636, 647 (6th Cir. 2020), *cert. denied,* 141 S. Ct. 1750, (2021). The affidavit "must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *White*, 874 F.3d at 497.

In determining what is necessary to show a minimally sufficient nexus between the place to be searched and evidence sought, we have followed the Supreme Court's rejection of subjectivity. *Laughton*, 409 F.3d at 752. In *Laughton*, we held that "the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant." *Id.* We therefore undertake the good faith analysis based on what was contained in the search warrant affidavit.

The affidavit at its most basic level says that law enforcement received complaints that Helton was selling methamphetamine from his residence; a source saw someone purchase methamphetamine at Helton's residence; and the deputies saw Helton with a "clear baggie" that had some type of "residue," and small bills. The anonymous complaints provide minimal information, but the information is related to the trafficking of drugs. Though the reliability of the source's tip is lacking in several respects, it provides underlying factual circumstances regarding the basis of the informant's knowledge. That tip provides some support for a connection between drug dealing and Helton's home because, while there is no information about the reliability of the source other than the bald reference by the affiant officer to a "reliable source," the source did claim to personally observe a drug deal and connects that drug deal with

Helton's residence. *See Dyer*, 580 F.3d at 391. The presence of a clear baggie with some sort of residue and the opinion of the officer also supply a minor inference of support. Under the good faith standard, the totality of the information in the affidavit provides "some modicum of evidence" that drug dealing was occurring at Helton's home. *White*, 874 F.3d at 497.

Because we cannot say that the affidavit was "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant," the good faith exception applies to the search warrant for Helton's home. *Id.* at 496. Thus, the exclusionary rule does not apply to the evidence obtained from Helton's home and the search warrant for Patsy Hopkins' residence is not fruit of the poisonous tree.

## B.  Juror Excusal

We review a district court's decision to replace a juror with an alternate for an abuse of discretion. *United States v. De Oleo*, 697 F.3d 338, 342 (6th Cir. 2012). A district court may replace a juror with an alternate juror when a juror is "unable to perform" or is "disqualified from performing their duties." Fed. R. Crim. P. 24(c)(1). If the court has "reasonable cause" to replace the juror, then the parties' consent is not required. *De Oleo*, 697 F.3d at 341. A defendant is entitled to a new trial only if the defendant shows he was prejudiced by the court's decision to remove the juror. *See id.* at 342.

The district court expressed concern about Juror 191's personal knowledge of Moore, gleaned from observing Moore when she came to shop in the store where the Juror worked. While the Juror said that she had never seen Moore take anything from the store, Moore was someone she watched for shoplifting. It is true that the Juror responded at certain points that she could set aside her personal experiences with Moore and decide the case in accordance with the court's instructions. But the court was troubled because on two separate occasions Juror 191 equivocated, saying "I think so" when asked whether she could set aside her personal experience and decide the case. The district court also explained that it was concerned because Juror 191 personally knew Moore and felt it necessary to watch Moore to see if she would shoplift. The trial court is in the "best position" to determine whether a juror is "able to shoulder the obligations of jury service." *Id.* Here, the district court thoroughly explained its concerns and

based them on relevant information that Juror 191 provided. The court acted within its discretion in striking Juror 191.

### III. CONCLUSION

Though the search warrant for Helton's home lacked the required probable cause, the good faith exception applies. Because, based on the good faith exception, the exclusionary rule need not apply to the evidence found during the search of Helton's home, and because the district court did not abuse its discretion by excusing Juror 191, we **AFFIRM**.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

SUHRHEINRICH, Circuit Judge, concurring in part and dissenting in part.

I agree that the good faith exception to the warrant requirement requires us to affirm. Indeed, "[t]his case . . . falls within *Leon*'s heartland," *United States v. Baker*, 976 F.3d 636, 648 (6th Cir. 2020), because it offers more than "only an officer's conclusion that probable cause exists without any statement of adequate supporting facts," *id.* at 647 (cleaned up).  Nor is there a whiff of police misconduct, let alone a deliberate or reckless violation of the Fourth Amendment. *Id.* at 646.  Thus, "any error in deciding probable cause exists for the search warrant belongs primarily to the *magistrate* issuing the warrant, not the *officer* seeking it." *Id.* at 647. "Suppression is not worth its substantial costs" under these circumstances. *Id*.  I therefore agree that we should affirm the district court's judgment.

But I disagree that the search warrant affidavit was deficient.  As the majority acknowledges, the anonymous complaints that Helton was selling methamphetamine from his residence, though minimally informative, were "related to the trafficking of drugs." Maj. Op. at 12.  Second, the affiant characterized the tipster as "reliable," which certainly suggests to me that the officer knew the informant.  Under our precedents, "the statements of a person 'whose identity was known to the police and who would be subject to prosecution for making a false report' are 'entitled to far greater weight than those of an anonymous source.'" *Baker*, 976 F.3d at 649 (quoting *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005)).  And, according to our decision in *United States v. Dyer*, "[b]ecause the informant witnessed the illegal activity on the premises searched and was known to the officer writing the affidavit, there were sufficient indicia of reliability without substantial independent police corroboration." 580 F.3d 386, 392 (6th Cir. 2009).  That is precisely the situation here.  Thus, "[f]atally faulting this affidavit for failing to name the informant[] or explain that [he] previously gave accurate information frustrates the totality-of-the-circumstances review we must conduct" because "it described [the]

informant['s] base[] of knowledge for [his] tip[.]" *United States v. Hines*, 885 F.3d 919, 924–25 (6th Cir. 2018).

Third, as the majority puts it, the source's tip was reliable in at least one respect because "it provide[d] underlying factual circumstances regarding the basis of the informant's knowledge"—namely that the source "saw someone purchase methamphetamine at Helton's residence." Maj. Op. at 12–13. Thus, the tip "provide[d] some support for a connection between drug dealing at Helton's home because[] . . . the source did claim to personally observe a drug deal and connect that drug deal with Helton's residence." *Id.* at 13.

Fourth, there was some corroborating evidence. The affidavit also notes that, when the officers executed an arrest warrant on Helton, he had a clear baggie with undisclosed residue (as opposed to a ham sandwich) and several small bills, which, as the majority notes, "provides 'some modicum of evidence' that drug dealing was occurring at Helton's home." *Id.* (citation omitted); *see May*, 399 F.3d at 824 ("The additional evidence substantiating an informant's reliability . . . may be any set of facts that support the accuracy of the information supplied by the informant"). These facts, when viewed in totality, rather than sliced and diced by the majority, provide an affirmative answer to "'the commonsense, practical question' of whether an affidavit is sufficient to support a finding of probable cause." *May*, 399 F.3d at 822 (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)); *see generally United States v. Bell,* No. 20-1884, 2022 WL 59619, at *2–5 (6th Cir. Jan. 6, 2022) (holding that an affidavit provided probable cause where it stated that a known-but-unnamed informant indicated that the defendant was selling cocaine from a home, which provided the informant's "basis of knowledge"—he observed the sale of cocaine, and made clear that the police had worked with the informant in other controlled buys).

For these reasons, I concur in part and dissent in part.