NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0267n.06

No. 22-3919

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 18, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAPHAEL ORTIZ, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, GIBBONS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** This case addresses the constitutional validity of a search warrant. Law enforcement agents tracked Defendant-Appellant Raphael Ortiz as he engaged in a series of drug sales involving three locations: a house Ortiz used to sell narcotics, an apparent stash house, and what an FBI agent concluded was Ortiz's residence (denominated Premises 1, 2, and 3, respectively). Surveillance showed that Ortiz traveled between these locations, including one episode in which Ortiz was observed bringing suspected fentanyl from the stash house to the house used to sell drugs. Based on an affidavit detailing these and other facts, a search warrant was issued for all three locations. Ortiz appeals the district court's denial of his motion to suppress the evidence recovered from the stash house and his residence. We agree that the affidavit provided probable cause to search the stash house, and conclude that officers

could have relied on the affidavit in good faith to search Ortiz's residence. As a result, we **AFFIRM** the denial of Ortiz's suppression motion.

## I.   BACKGROUND

### A.   Factual Background

Federal and local agents began investigating Ortiz in October 2017 for suspected distribution of fentanyl and a related crime. The investigation began with a tip from a confidential informant, known as CS1, that Ortiz and his half-brother were trafficking drugs out of the Youngstown, Ohio area. In October 2020, a second confidential source (CS2) identified a location in Youngstown, known as Premises 1, that Ortiz was using to sell narcotics. A third confidential source (CS3) then told agents in early December 2020 that Ortiz had provided a cell phone number to call for future narcotics transactions, and expressed a belief that Ortiz utilized a stash house near Premises 1.

In mid-December 2020, CS3 and case agents executed a controlled buy of narcotics. Ortiz told CS3 over FaceTime to go to Premises 1 to conduct the transaction. CS3 arrived there, followed by agents who captured physical and electronic surveillance of Ortiz entering CS3's car to discuss the sale. Ortiz left the car, went into Premises 1, and returned to the car to sell suspected fentanyl to CS3. The warrant used the term "suspected fentanyl" because at the time of the affidavit's drafting, although field testing identified the presence of fentanyl, lab testing of the drugs was pending.

Around this time, law enforcement also began to focus on a gray Cadillac Escalade. In late December, surveillance twice observed the Cadillac park at or in front of Premises 1; the second time, Ortiz exited the driver's seat, opened a rear door to show a passenger something, and returned to the driver's seat before driving away. On a separate occasion, the Cadillac went to Premises 1

from Premises 3. While there, surveillance recorded someone walking into Premises 1 emptyhanded before leaving with a small bag; the Cadillac then returned to Premises 3.

In early January 2021, CS3 and case agents performed a second controlled buy. As in the first controlled buy, Ortiz told CS3 over FaceTime to come to Premises 1 to complete the transaction, and CS3 again arrived trailed by case agents. This time, CS3 was equipped with an audio-visual recording device. Ortiz was observed driving the Cadillac from Premises 3 directly to Premises 1. Based on this and the preceding observations, as well as multiple additional instances in which the Cadillac was parked in the driveway of Premises 3, FBI Agent Lee Stalnaker concluded that Premises 3 was Ortiz's residence. At Premises 1, Ortiz and CS3 discussed the sale, and Ortiz left and walked next door to another house denoted Premises 2. Ortiz returned to Premises 1 with what law enforcement estimated to be one kilogram of suspected fentanyl under his shirt; he then mixed and weighed some of the substance before selling it to CS3.

## B. Procedural Background

On January 6, 2021, based on Stalnaker's affidavit containing the above-listed facts, a federal magistrate judge issued—and agents executed—a search warrant for Premises 1, 2, and 3. Law enforcement recovered a small amount of cash, guns, drugs, drug-related items from Premises 1; similar items from Premises 2; and a gun along with a large amount of cash from Premises 3. Based on this evidence, a grand jury returned a seven-count indictment concerning Ortiz's fentanyl distribution and use of firearms to further that crime.

Although Ortiz conceded that Stalnaker's affidavit provided probable cause to search Premises 1, he moved to suppress the evidence seized from Premises 2 and 3. The district court found, however, that suppression was not warranted because probable cause supported the searches of both locations. Ortiz then pleaded guilty to three of the seven counts in the indictment,

and the Government dismissed the remaining four counts. In his plea, Ortiz reserved the right to challenge the suppression determination. The district court imposed a sentence of 160 months' imprisonment and four years of supervised release, and Ortiz timely appealed.

## II.   ANALYSIS

"When reviewing a district court's decision concerning a motion to suppress evidence, an appellate court 'review[s] findings of fact under the clear-error standard and review[s] conclusions of law de novo.'" *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023) (quoting *United States v. Whitley*, 34 F.4th 522, 528 (6th Cir. 2022)). "A district court's after-the-fact conclusion that probable cause existed is a legal determination that an appellate court reviews de novo." *Id.* But because the "judicial officer who issues a warrant 'should be paid great deference,'" a magistrate judge's original decision to issue a warrant "should be left undisturbed if there was a 'substantial basis' for the probable-cause finding." *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 238-39 (1983)). Ultimately, a "denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason." *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020) (quoting *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019)).

Ortiz accepts, as he did in the district court, that the search warrant was valid as to Premises 1. But Ortiz appeals the district court's refusal to suppress evidence from Premises 2 and Premises 3. We consider each site in turn.

### A.     Premises 2

Ortiz contends that the search warrant was not supported by probable cause as to Premises 2. The Fourth Amendment to the Constitution mandates that warrants be issued only upon probable cause. U.S. Const. amend. IV. Probable cause requires "only a probability or

substantial chance of criminal activity, not an actual showing of such activity." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (quoting *Tagg*, 886 F.3d at 585). This inquiry is based on "the 'totality of the circumstances,'" viewed "through the 'lens of common sense.'" *Id.* at 309 (quoting *Florida v. Harris*, 568 U.S. 237, 244, 248 (2013)).

Probable cause is also location-specific: There must be a sufficient "nexus between the place to be searched and the evidence sought" for probable cause to exist at a particular site. *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). Probable cause to search a specific location therefore exists "when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in [that] particular place." *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017) (quoting *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013)).

Ortiz does not contest that the information in Agent Stalnaker's affidavit provided probable cause that Ortiz was dealing drugs from Premises 1. The affidavit also contained facts connecting the January 2021 controlled buy to Premises 2. To initiate that transaction, CS3 called Ortiz over FaceTime and discussed a proposed drug order. Equipped with an audio-visual recording device, CS3 met Ortiz at Premises 1, where they discussed the transaction further. Physical and electronic surveillance then captured Ortiz walking directly next door to Premises 2 before returning to Premises 1 with what appeared to be a kilogram of fentanyl under his shirt. Ortiz then opened, mixed, and weighed the suspected fentanyl before completing the sale.

These observations, together with CS3's prior report to agents that Ortiz maintained a narcotics stash house near Premises 1, sufficiently established probable cause that evidence of a crime would be found at Premises 2. Agents observed Ortiz walking to Premises 2—in the middle of a narcotics transaction—and returning with a substantial amount of suspected fentanyl. That

observation established at least a fair probability that evidence of Ortiz's drug dealing would be found at Premises 2. *See Perry*, 864 F.3d at 415.

Ortiz's contends that because narcotics were never seen at Premises 2, this case is like *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), *overruled on other grounds by DePierre v. United States*, 564 U.S. 70 (2011). In *Higgins*, it is true, probable cause did not exist to search a location where officers did not observe drugs. *Id.* at 390. But Ortiz's argument confuses *Higgins*'s facts for a legal standard. That drugs were never observed at the search location in *Higgins* vitiated probable cause in that case because it left the search warrant supported only by a tip from a confidential informant whose reliability was unknown. *Id.* at 389-90.

But here, conversations and controlled drug buys between CS3 and Ortiz served "to bolster the tips of" CS3 as a confidential informant known to Stalnaker but not the magistrate judge. *See United States v. Ferguson*, 252 F. App'x 714, 721 (6th Cir. 2007). Among the tips bolstered was CS3's allegation that Ortiz was storing drugs at a stash house near Premises 1. Surveillance then captured Ortiz, in the middle of a narcotics transaction with CS3, walking from Premises 1 to Premises 2 and returning with suspected fentanyl under his shirt. Unlike in *Higgins*, the magistrate judge could safely conclude that Stalnaker's affidavit provided a sufficient "nexus between the place to be searched and the evidence sought" to establish probable cause for searching Premises 2. *Helton*, 35 F.4th at 518 (quoting *Carpenter*, 360 F.3d at 594).

Ortiz also questions the affidavit's description of the surveillance footage capturing his trip to and from Premises 2 during the January 2021 controlled buy. He notes that the affidavit did not state whether Ortiz took any package from Premises 1 to Premises 2 during the transaction, arguing that this "raises questions" about Stalnaker's description of his movements. And he casts as

"curiously specific" the description of the package that Ortiz returned with from Premises 2: "approximately one kilogram of suspected fentanyl."

The applicable standard, however, requires that we "review all evidence in a light most favorable to the Government" when evaluating a district court's denial of a suppression motion. *United States v. Gilbert*, 952 F.3d 759, 762 (quoting *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006)). It would contravene that obligation to discredit Stalnaker's description of Ortiz carrying suspected fentanyl from Premises 2 from Premises 1. Additionally, the affidavit explained that the term "suspected fentanyl" was used because, while field testing had identified the presence of fentanyl in the drugs, results from lab testing were pending when the affidavit was written. Finally, the approximation of the fentanyl amount is not unreasonable given the video evidence of the package carried and used by Ortiz during the transaction.

In sum, the totality of the circumstances presented to the magistrate judge demonstrated a fair probability that there would be evidence of Ortiz's criminal activity at Premises 2. *See Perry*, 864 F.3d at 415. Suppression of evidence recovered from that location was not warranted.

### B.      Premises 3

Ortiz also challenges the denial of his suppression motion as to Premises 3. The Government asserts that we need not reach this issue because the evidence recovered from Premises 1 and 2 supports the three counts to which Ortiz pleaded guilty and the sentencing enhancement applied by the district court. But we have explained that, at least in some circumstances, a defendant who partially prevails in an appeal of a suppression motion may withdraw his guilty plea. *United States v. Leake*, 95 F.3d 409, 419-20 & n.21 (6th Cir. 1996). Many of our sister circuits, moreover, have adopted harmless error-type standards under which a defendant may withdraw a guilty plea after a successful appeal unless the Government can prove

that the erroneously denied suppression motion did not contribute to the defendant's decision to plead guilty. *See United States v. Lustig*, 830 F.3d 1075, 1087-91 (9th Cir. 2016) (adopting such a standard and noting similar standards in the First, Second, Tenth, and D.C. Circuits). The Government makes no argument that Ortiz would have taken the offered plea deal even if he had not faced prosecution using the evidence recovered from Premises 3. As a result, we proceed to evaluating Ortiz's motion to suppress the evidence from that location.

The affidavit detailed that (1) the Cadillac was parked frequently at Premises 3 and was seen several times at Premises 1, including one occasion in which Ortiz was seen exiting the driver's seat of the vehicle; (2) on one occasion, the Cadillac left Premises 3 and took one stop before arriving at Premises 1, where an individual obtained a small bag before the vehicle returned to Premises 3; and (3) Ortiz drove the Cadillac directly from Premises 3 to Premises 1 to complete the second controlled buy. Based on these observations, Stalnaker concluded that Premises 3 was Ortiz's residence and that there was probable cause to search the location.

This probable cause conclusion included several inferential steps, including that the Cadillac was Ortiz's car (even though Ortiz was observed in the driver's seat only twice) and that the vehicle's frequent location at Premises 3 meant that this address was Ortiz's residence. Even assuming that Stalnaker appropriately inferred that Premises 3 was Ortiz's dwelling, moreover, "we have rejected 'the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.'" *United States v. Reed*, 993 F.3d 441, 448 (6th Cir. 2021) (quoting *Brown*, 828 F.3d at 383). Instead, "we have required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence." *Brown*, 828 F.3d at 383. Here, the affidavit does not state that any drug transactions were undertaken at Premises 3. As described, however, it does note that Ortiz drove directly from

Premises 3 to Premises 1 for a controlled buy and that, on a separate occasion, the Cadillac left Premises 3, took a stop, and arrived at Premises 1, where an individual was seen obtaining an unidentified small bag before the Cadillac returned to Premises 3. These observations are similar to—though not precisely the same as—"the police watch[ing] the suspect leave a home, undertake a drug deal, and return there," which we have said supports probable cause to search the home. *Reed*, 993 F.3d at 448 (citing *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011)). Considering the totality of the circumstances, whether probable cause existed to search Premises 3 is a close question.

The exclusionary rule typically precludes the use of evidence obtained from an invalid warrant—that is, one not supported by probable cause. *See Illinois v. Krull*, 480 U.S. 340, 347 (1987); U.S. Const. amend. IV. But under the good faith exception to that rule, suppression is not warranted where evidence was "obtained in objectively reasonable reliance" on a "subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). "For this exception to apply, the affidavit must contain 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" *Brown*, 828 F.3d at 385 (quoting *Carpenter*, 360 F.3d at 596). In other words, "the affidavit . . . must draw some plausible connection to the residence." *Id.* at 385-86.

The good faith exception does not apply, however, if the warrant relied on a "bare bones" affidavit—one "*so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *Helton*, 35 F.4th at 522 (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)). An affidavit is properly categorized as "bare bones" if it relies only on "suspicions[] or conclusions" rather than "some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* (quoting *Christian*, 925 F.3d at 312). For example, if an affidavit does not state that "police ever surveilled [the

defendant's] home or otherwise attempted any investigation regarding whether the residence was linked to the alleged drug" activity, the good faith exception does not apply. *Brown*, 838 F.3d at 385.

Here, the affidavit stated that electronic surveillance observed the Cadillac frequently parked at Premises 3 and operated twice by Ortiz; from these facts, Stalnaker drew the inference that Premises 3 was Ortiz's residence. The affidavit also linked Premises 3 to one drug transaction and another possible transaction, including the observation of Ortiz driving the vehicle directly from Premises 3 to the second controlled buy. Finally, it provided numerous details about the broader surveillance through which law enforcement verified Ortiz's ongoing drug-related activity. In sum, the affidavit described a minimally sufficient nexus between Ortiz's illicit activity and Premises 3, *see Brown*, 828 F.3d at 385, based on factual representations upon which the officers executing the search could reasonably rely, *see Helton*, 35 F.4th at 522. As a result, regardless of whether the affidavit supplied probable cause to search Premises 3, we conclude based on the good faith exception that suppression of evidence from that location was not warranted. *See Trice*, 966 F.3d at 512 (noting that a suppression motion denial will be affirmed if justifiable on any basis).

## III.   CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.