NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0255n.06

Case No. 25-5577

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jun 04, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JOHNNY L. BARBOUR, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |
| | ) | |

Before: COLE, STRANCH, and BUSH, Circuit Judges.

COLE, Circuit Judge. After law enforcement officers seized drugs, drug paraphernalia, firearms, ammunition, and cash during a search of Johnny Barbour's home, a grand jury indicted Barbour on three counts of drug- and firearm-related offenses. Barbour unsuccessfully moved to suppress the evidence seized during the search. Once the district court denied his motion, he pleaded guilty. Barbour claims the district court erred by denying his motion to suppress. For the reasons below, we affirm.

I.

In late 2022, both the City of Tullahoma Police Department and the Coffee County Sheriff's Department began investigating Barbour for drug-related offenses. In December, a Coffee County officer, Blake Simmons, and a Tullahoma officer, Jason Maloney, separately but contemporaneously applied for a search warrant for Barbour's Helen Street residence. The state court judge first met with the officers from Coffee County. But upon looking at the warrant

affidavit, the judge realized that the Tullahoma officers were waiting to apply for the same search warrant. The judge gathered the officers from both departments, "flipped through" both affidavits, and asked the officers to decide which search warrant he should sign. (Mot. to Suppress Hr'g Tr., R. 37, PageID 563.) After a brief discussion, the officers decided that Coffee County was best positioned to quickly execute the warrant. So, the judge signed Coffee County's search warrant.

Coffee County officers searched Barbour's residence and seized drugs, drug paraphernalia, firearms, ammunition, and cash. They arrested Barbour, and a grand jury indicted him on charges of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and possession of a firearm in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Barbour moved to suppress all evidence seized in his home, arguing that the search warrant lacked probable cause. The government opposed the motion, conceding that the affidavit may have lacked probable cause, but arguing that the officers relied on the warrant in good faith. The magistrate judge held a suppression hearing. Maloney, Simmons, and another officer from Coffee County testified, and the magistrate judge admitted into evidence both search warrant affidavits.

The magistrate judge recommended the district court grant the motion, finding the search warrant lacked probable cause and the good-faith exception did not apply. The government objected, and the district court sustained the objections in part. The district court agreed with the magistrate judge that the warrant lacked probable cause but concluded the officers acted in good faith when they relied on it. It therefore denied Barbour's motion to suppress.

Barbour pleaded guilty to possession of methamphetamine with intent to distribute and possession of a firearm in furtherance of a drug crime, and the government agreed to move to

dismiss the remaining felon in possession charge. The district court accepted the plea agreement and sentenced Barbour to 300 months' imprisonment. Barbour appeals.

## II.

When assessing a district court's denial of a motion to suppress, we review its factual findings for clear error and its legal conclusions de novo. *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023). We must view the evidence in the "light most likely to support the decision of the district court." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

## III.

The Fourth Amendment guarantees the "right of the people to be secure in their . . . houses" against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. It also requires law enforcement officers to have "probable cause" to obtain a search warrant. *Id.* The exclusionary rule, therefore, prohibits the government from using evidence obtained in violation of the Fourth Amendment at trial. *Herring v. United States*, 555 U.S. 135, 139 (2009). But courts will not exclude evidence where police rely in good faith on a search warrant that is not supported by probable cause so long as their reliance is objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922–24 (1984).

The good-faith exception, however, is not without limits. *Id.* at 923. As relevant here, it does not apply when an officer relies on a search warrant affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)), or when suppression is necessary to deter "recurring or systemic negligence," *United States v. Sanders*, 106 F.4th 455, 467 (6th Cir. 2024) (en banc) (citation modified).

There is no dispute that the search of Barbour's home lacked probable cause. The only question on appeal is whether the district court correctly applied the good faith exception in denying Barbour's motion to suppress.

A.

First, Barbour argues no reasonable officer could have viewed the search warrant as valid because it so obviously lacked probable cause. We refer to such an affidavit as "bare bones." *Sanders*, 106 F.4th at 468.

An affidavit is bare bones if it is "conclusory" and contains only a guess that evidence of a crime would be found. *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). An affidavit is not bare bones, however, when it falls short of establishing probable cause but contains a "minimally sufficient nexus" between the criminal activity and the place to be searched. *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). When there is a "modicum of evidence, however slight" showing "some connection, regardless of how remote," a "minimally sufficient nexus" exists. *Sanders*, 106 F.4th at 469 (citation modified).

Though it lacked probable cause, the affidavit supporting Coffee County's search warrant passes this less demanding test when viewed in the light most favorable to the district court's decision. *See Frazier*, 423 F.3d at 531, 536. The affidavit detailed the investigation into Barbour's suspected drug dealing: a confidential informant told officers that "a black male subject named Johnny" was selling methamphetamine out of the Helen Street residence, and a confidential informant subsequently twice observed drug transactions inside the Helen Street residence. (Search Warrant Aff., R. 13-1, PageID 71.) This information, taken together, shows at least a "minimally sufficient nexus" connecting Barbour's drug trafficking activity and the Helen Street residence. *See Sanders*, 106 F.4th at 469 (citation modified).

Barbour's arguments to the contrary are unpersuasive. First, Barbour asserts the search warrant affidavit relied on stale information because it did not date the confidential informant's observations of the drug transactions. Although Simmons could have stated the applicable dates more clearly in his affidavit, the dates he provided were sufficient to support a "reasonable, albeit not airtight, inference" that the confidential informant had recently seen the sale of drugs in Barbour's home. *See White*, 874 F.3d at 500. The affidavit provided a date range for each of the three meetings with the confidential informant. The second and third dates preceded a description of the confidential informant's observations of drug transactions at the Helen Street residence. And the date ranges spanned in time from two months to 24-72 hours before the state court judge signed the affidavit.

These dates, taken in context of the totality of the affidavit, demonstrate at least "some connection" chronologically between the informant's observations and the dates stated in the affidavit. *See Sanders*, 106 F.4th at 469 (citation modified). They also distinguish this case from *United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006), in which we held that a search warrant affidavit lacked probable cause because it did not have "at least some temporal reference point" from which to gauge the existence of probable cause.

Second, Barbour argues the affidavit was bare bones because it did not explain whether the confidential informant was reliable or whether the officers had corroborated the informant's reports. For an officer to rely on an affidavit in good faith, the affidavit need not meet the more demanding probable cause standard, but it must nonetheless include "particularized facts that indicate veracity, reliability, and basis of knowledge." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (citation omitted).

The affidavit "provide[d] underlying factual circumstances regarding the basis of the informant's knowledge." *See United States v. Helton*, 35 F.4th 511, 522 (6th Cir. 2022). The informant claimed to have twice personally observed the sale of methamphetamine inside the Helen Street residence. And while the affidavit provided little evidence of reliability outside of referring to the source as "reliable," it stated that the informant had "previous experiences" with methamphetamine and that the officers had met with the informant three times. (Search Warrant Aff., R. 13-1, PageID 71.) Thus, "the totality of the information in the affidavit provides 'some modicum of evidence' that" Barbour was selling methamphetamine at the Helen Street residence. *See Helton*, 35 F.4th at 522 (quoting *White*, 874 F.3d at 497).

Consequently, we cannot say that the district court erred in concluding that the affidavit was not bare bones.

B.

Alternatively, Barbour contends that the district court erred by applying the good-faith exception because Coffee County engaged in systemic negligence by maintaining "an intentional policy of skirting the line on probable cause." (Appellant Br. 33.) Specifically, Barbour argues that Coffee County officers usually omit information about controlled drug buys from their search warrant affidavits.

In factual circumstances evidencing the need to deter recurring or systemic negligence, the good faith exception does not apply. *See Sanders*, 106 F.4th at 467 (quoting *Herring*, 555 U.S. at 144); *see also United States v. Booker*, 728 F.3d 535, 548 (6th Cir. 2013) (applying the exclusionary rule to deter officers' recurring unlawful behavior where evidence established three incidences in three years). A single, isolated instance of negligence, however, cannot establish a systemic issue. *See Herring*, 555 U.S. at 137. We acknowledge that Simmons's testimony

suggests that to protect informants' identities Coffee County officers commonly omit information describing controlled buys from affidavits. But, viewed in the light most favorable to the district court's decision, the record lacks sufficient evidence that Coffee County officers' omissions have repeatedly resulted in warrants lacking probable cause. At most, the record establishes only this one instance where the omission of controlled buy information resulted in a warrant affidavit lacking probable cause.

Simmons testified that Coffee County officers are "looking for probable cause" to search a residence. (Mot. to Suppress Hr'g Tr., R. 37, PageID 570.) Maloney testified that Tullahoma officers also typically omitted controlled buy information to protect the safety of informants and that "those search warrants would have been upheld in federal court as well as state court." (*Id.* at PageID 542.) Presumably, in other cases, Coffee County officers are similarly able to establish probable cause without including controlled buy information by providing other details in their warrant affidavits.

On reply, Barbour expands his argument by briefly arguing that even if there is no systemic malfunction, Simmons's individual conduct was "reckless." (Reply Br. 16.) But although Barbour made a passing reference to reckless conduct in his opening brief, he described the alleged "policy," not Simmons's individual conduct, as reckless. (Appellant Br. 33.) He thus forfeited this argument by not developing it in his opening brief. *See United States v. Simpson*, 138 F.4th 438, 454 (6th Cir. 2025) ("But [the defendant] forfeited this argument too, in this instance by failing to develop it in his opening brief on appeal.").

Based on this record, the district court did not err by finding no systemic issue.

IV.

For these reasons, we affirm the district court's judgment.