RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LOUIS ALFORD,

     *Plaintiff-Appellant*,

 *v.*

BRANDON DEFFENDOLL; ZACHARY SMITH; CANNON COUNTY, TENNESSEE,

     *Defendants-Appellees*.

No. 25-5149

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:23-cv-00272—Eli J. Richardson, District Judge.

Argued: December 11, 2025

Decided and Filed: January 23, 2026

Before: MOORE, THAPAR, and RITZ, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Drew Justice, JUSTICE LAW OFFICE, Murfreesboro, Tennessee, for Appellant. T. William A. Caldwell, ORTALE KELLEY LAW FIRM, PLLC, Nashville, Tennessee, for Appellees. **ON BRIEF:** Drew Justice, JUSTICE LAW OFFICE, Murfreesboro, Tennessee, for Appellant. T. William A. Caldwell, ORTALE KELLEY LAW FIRM, PLLC, Nashville, Tennessee, for Appellees.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Outside of Woodbury, Tennessee, deputies Brandon Deffendoll and Zachary Smith pulled over a pickup truck for minor traffic violations.

As the driver, Louis Alford, and his girlfriend rummaged around for the documents Deffendoll requested, Deffendoll spotted a syringe filled with clear liquid.  Deffendoll proceeded to search the truck, unearthing additional empty syringes, a baggie of powder, paper smeared with residue, empty baggies, pills that were prescribed to a person who was not present, and two digital scales. Deffendoll arrested Alford and charged him with three state drug offenses.  The charges were ultimately dismissed, but not before Alford was jailed and his parole was revoked.

Alford then filed this action against Deffendoll, Smith, and Cannon County, bringing false arrest, malicious prosecution, and *Monell* claims under 42 U.S.C. § 1983.  Following discovery, the district court granted the defendants summary judgment on all three § 1983 claims.  For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment.

## I.  BACKGROUND

### A.  Facts

On March 25, 2022, Louis Alford was driving a pickup truck outside of Woodbury, Tennessee with Julie Cass, his girlfriend, sitting in the front passenger seat.  R. 32 (Pl.'s Resp. to Statement of Undisputed Material Facts ("Undisputed Facts") ¶ 3) (Page ID #196); R. 34-3 (Preliminary Investigative Rep. at 1) (Page ID #313).  After observing that the truck lacked operable brake lights and up-to-date registration tags, Cannon County Sheriff's Deputies Brandon Deffendoll and Zachary Smith pulled Alford over.  R. 32 (Undisputed Facts ¶ 3) (Page ID #196); R. 27-7 (Deffendoll Decl. ¶ 4) (Page ID # 119).  Deffendoll was equipped with a body camera, which recorded throughout the stop.  *See, e.g.*, Deffendoll Cam. 1 at 00:01–05.  Smith, by contrast, was not equipped with a body camera.  R. 34-2 (Smith Dep. at 20) (Page ID #288).

Upon reaching the driver's window, Deffendoll requested identification from Alford and Cass.  Deffendoll Cam. 1 at 00:50–01:54.  While searching for their licenses, Alford lifted the dashboard cover, revealing a syringe on the dash in front of Cass.  *See id.* at 01:55–02:05; R. 27-9 (Alford Dep. at 40–41) (Page ID #144–45).  Catching sight of the syringe, Deffendoll ordered Alford and Cass to exit the truck.  Deffendoll Cam. 1 at 02:06–02:35.  They complied, and Deffendoll proceeded to search the truck for contraband.  *See, e.g., id.* at 02:35–10:00.  He

recovered the syringe, which was filled with a clear liquid.  Deffendoll Cam. 2 at 04:19–04:26; R. 32 (Undisputed Facts ¶ 8) (Page ID #197).  Deffendoll then searched the remainder of the truck's cab, uncovering additional empty syringes, a baggie containing powder, paper smeared with brown residue, numerous empty baggies, pills in a prescription bottle labeled "Potassium CL" and prescribed to "April Ashley," and two electronic scales.  R. 32 (Undisputed Facts ¶¶ 10–11, 18) (Page ID #198–200); R. 34-3 (Preliminary Investigation Rep. at 2) (Page ID #314).  As he was conducting the search, an unknown deputy, who had arrived at the scene after the stop began, handed Deffendoll a small glass vial coated with residue that she had recovered from Cass's person.  Deffendoll Cam. 4 at 02:20–02:32.  Based on this evidence, Deffendoll decided to place Alford under arrest.  R. 32 (Undisputed Facts ¶¶ 20–24) (Page ID #200–01).

Later that day, Deffendoll charged Alford with simple possession of heroin, possession of drug paraphernalia, and unlawful possession of a legend drug.  R. 27-2 (Aff. of Compl. Simple Possession) (Page ID #111); R. 27-3 (Aff. of Compl. Drug Paraphernalia) (Page ID #113); R. 27-1 (Aff. of Compl. Unlawful Possession of a Legend Drug) (Page ID #109).  As a result of the charges, Alford spent an unspecified period of time in jail.  R. 27-9 (Alford Dep. at 67) (Page ID #151).  Because he was on parole at the time,[1] his arrest prompted the Parole Board to hold a revocation hearing, during which Deffendoll described the fruits of his search.  R. 32 (Undisputed Facts ¶¶ 27–28) (Page ID #201–02).  In May 2022, the Parole Board revoked Alford's parole, and as a result, he spent over a year in prison.  *Id.* ¶ 29 (Page ID #202); R. 27-9 (Alford Dep. at 34) (Page ID #142).  The new drug-related charges against Alford, however, were dismissed in early August 2022.  R. 32 (Undisputed Facts ¶ 35) (Page ID #203); R. 27-5 (Cannon Cnty. Ct. General Sessions Party Detail at 1) (Page ID #116).

The Tennessee Bureau of Investigation ("TBI") completed its analysis of items recovered from Alford's car later that month.  R. 27-4 (Forensic Chemistry Rep. at 1) (Page ID #114).  The powder recovered from the vehicle tested positive for methamphetamine.[2]  *Id.*; R. 27-8 (Sullivan

---

[1]Alford was on parole after completing a decades-long prison sentence for second-degree murder.  R. 32 (Undisputed Facts ¶ 25) (Page ID #201); *see also State v. Alford*, No. M2012-00114-CCA-R3CO, 2012 WL 4572462, at *1 (Tenn. Crim. App. Oct. 2, 2012).

[2]Alford, in his brief, contends that the glass vial that was recovered from Cass, not the bag of powder found in the vehicle, tested positive for methamphetamine.  D. 18 (Appellant Br. at 9).  This plainly contradicts the record,

Dep. at 18) (Page ID #125).  Due to safety concerns, the TBI did not test the liquid inside the syringe.  R. 27-8 (Sullivan Dep. at 20–21) (Page ID #127–28).  The piece of paper with brown residue and the glass vial recovered from Cass contained too little residue to test.  *Id.* at 18, 24 (Page ID #125, 130).  And based on the pill's markings, TBI confirmed that the pills were potassium chloride, "a noncontrolled substance."  *Id.* at 23 (Page ID #129).

## B.  District-Court Proceedings

Alford subsequently filed this action against Deffendoll, Smith, and Cannon County.  R. 1 (Compl.) (Page ID #1–12).  In addition to several state-law claims, he brought three claims pursuant to § 1983:  (1) a false-arrest claim against Deffendoll and Smith; (2) a malicious-prosecution claim against Deffendoll; and (3) a claim against Cannon County pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging that it failed to supervise its deputies and that its deputies had habitually made drug arrests without probable cause.  *See id.* ¶¶ 54–57; *see also* R. 28 (Defs.' Mem. of Law in Supp. of Mot. Summ. J. at 7–19) (Page ID #167–79); R. 33 (Pl.'s Mem. of Law in Opp'n to Summ. J. at 5–14 (Page ID #209–18).  Following discovery, the defendants moved for summary judgment on all claims.  R. 27 (Defs.' Mtn. for Summ. J. at 1–3) (Page ID #105–07); R. 28 (Defs.' Mem. of Law in Supp. of Mot. Summ. J. at 1–25) (Page ID #161–85).

The district court granted summary judgment to Deffendoll and Smith on Alford's false-arrest and malicious-prosecution claims, ruling that no reasonable juror could find that Smith participated in Alford's arrest or that Deffendoll lacked probable cause to arrest and charge Alford.  *Alford v. Deffendol* [sic], No. 3:23-CV-00272, 2025 WL 297665, at *8–10 (M.D. Tenn. Jan. 24, 2025).  Because Alford could not demonstrate that he suffered any constitutional deprivation, the district court rejected his *Monell* claim.[3]  *Id.* at *10–12.  Alford timely appealed. *See* R. 46 (Notice of Appeal) (Page ID #418).

---

however.  The TBI did not test the glass vial recovered from Cass, R. 27-8 (Sullivan Dep. at 18) (Page ID #125), and Alford admitted that the substance which tested positive for methamphetamine was "taken from the vehicle," *see* R. 32 (Undisputed Facts ¶¶ 11, 16) (Page ID #198–99).

[3]Having dismissed all of Alford's federal-law claims, the district court declined to exercise supplemental jurisdiction over the various state-law claims included in the complaint and dismissed those claims without prejudice. *Alford*, 2025 WL 297665, at *12.  Alford does not challenge this aspect of the district court's ruling.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of summary judgment.  *Nash v. Bryce*, 157 F.4th 436, 443 (6th Cir. 2025).  Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in their favor.  *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020).  A genuine dispute of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Before turning our attention to the merits, we pause to clarify how an officer's assertion of qualified immunity informs the summary-judgment analysis.  Deffendoll raised a qualified-immunity defense below, *see* R. 28 (Defs.' Mem. of Law in Supp. of Mot. Summ. J. at 7–11) (Page ID #167–71), and continues to do so on appeal, D. 19 (Appellee Br. at 17–29).  Deffendoll's assertion of qualified immunity caused the district court to claim that we have issued "sometimes-conflicting opinions" on standards for evaluating qualified immunity at summary judgment and to remark that a defendant's assertion of qualified immunity somehow "alters the 'normal'" standards governing summary-judgment motions.  *See Alford*, 2025 WL 297665, at *4.

Because the district court failed to cite any conflicting decisions, we cannot identify the source of its confusion.  *See id.*  In any event, we reiterate that a defendant's assertion of qualified immunity triggers a familiar two-step inquiry.  *See, e.g.*, *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam).  At the first step, the plaintiff must demonstrate that the defendant officer violated a constitutional right.  *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).  At the second step, the plaintiff bears the burden of showing that the right was "clearly established at the time" of the alleged violation.  *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Courts may decide which step of the qualified-immunity analysis to address first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Crucially, and despite the district court's claim to the contrary, the Supreme Court has instructed that ordinary summary-judgment standards

apply at both steps. *See Tolan*, 572 U.S. at 656–57. Indeed, our decisions have consistently and repeatedly echoed the Court's guidance. *See, e.g.*, *Gambrel v. Knox County*, 25 F.4th 391, 400 (6th Cir. 2022); *Murray v. Dep't of Corr.*, 29 F.4th 779, 786 (6th Cir. 2022); *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). Thus, throughout the qualified-immunity inquiry, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656. And at bottom, a defendant officer is not entitled to summary judgment on qualified-immunity grounds if a reasonable jury could find that the defendant officer violated a clearly established right. *Shumate v. City of Adrian*, 44 F.4th 427, 449-50 (6th Cir. 2022).

## B. False-Arrest Claim

We begin our analysis with Alford's false-arrest claim against Deffendoll and Smith. To make out a Fourth Amendment false-arrest claim, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).

Alford's false-arrest claim against Smith stumbles out of the gate because, as the district court found, Alford did not adequately demonstrate that Smith was an arresting officer. *Alford*, 2025 WL 297665, at *10. As with all § 1983 claims brought against an individual officer, personal involvement in the alleged constitutional violation is a prerequisite to liability. *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014). In the context of a false-arrest claim, an officer's "mere presence" at the scene of the arrest or acting as "mere backup" to the arresting officer does not constitute personal involvement. *Frenchko v. Monroe*, 160 F.4th 784, 800 (6th Cir. 2025) (quoting *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991)). Instead, there must be a "causal connection between the officer's actions and the alleged constitutional violation." *Sexton v. Cernuto*, 18 F.4th 177, 185 (6th Cir. 2021).

Here, Alford has never disputed that Deffendoll—not Smith—searched the truck, discovered the syringes, powder, brown residue, baggies, pills, and scales, and decided to arrest Alford. R. 32 (Undisputed Facts ¶¶ 6–11, 18) (Page ID #197–200). On top of this, Alford fails to identify a single action Smith took during the stop, much less explain how Smith's actions contributed to the arrest. D. 18 (Appellant Br. at 25–26). Worse still, Alford admits that

Deffendoll's body camera footage shows Smith operating as mere backup to Deffendoll. *Id.* at 25. In doing so, Alford concedes Smith's status as a non-participant. *See Frenchko*, 160 F.4th at 800. We therefore agree with the district court that Alford's false-arrest claim against Smith fails.

Turning to Deffendoll, Alford maintains that a reasonable jury could find that Deffendoll arrested him without probable cause. D. 18 (Appellant Br. at 26–40). Probable cause exists when "a person of 'reasonable caution,' considering 'the facts and circumstances within' the officer's knowledge, would 'believe that an offense had been, was being, or was about to be committed.'" *Akima v. Peca*, 85 F.4th 416, 423 (6th Cir. 2023) (quoting *Hartman v. Thompson*, 931 F.3d 471, 481 (6th Cir. 2019)). Because probable cause is an objective, totality-of-the-circumstances standard, we disregard the officer's subjective motives and center our analysis on the inculpatory and exculpatory evidence available at the time of the arrest. *Id.* These facts must support a belief in a "probability" or "substantial chance" of guilt. *Wesby*, 583 U.S. at 57 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). This belief, however, "must be particularized with respect to the person . . . seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Whether an officer was authorized to carry out an arrest, in most cases, turns on the substantive elements of the state law at issue. *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Alford was arrested on suspicion of committing three state offenses: (1) simple possession of heroin, (2) possession of drug paraphernalia, and (3) unlawful possession of a legend drug. R. 32 (Undisputed Facts ¶¶ 20–21, 24) (Page ID #200–01). We must affirm the district court's grant of summary judgment if probable cause existed "for [just] *one* of these offenses." *Howell v. McCormick*, 148 F.4th 834, 849 (6th Cir. 2025).

At the very least, there exists no genuine dispute that Deffendoll possessed probable cause to arrest Alford for simple possession of heroin. Tennessee law prohibits "knowingly possess[ing] or casually exchang[ing] a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418(a). Given the facts available to Deffendoll, there existed a substantial chance that Alford possessed heroin. Deffendoll observed

a loose syringe filled with a clear liquid underneath the truck's dashboard cover. R. 32 (Undisputed Facts ¶¶ 6–8) (Page ID #197). His subsequent search of the truck recovered that syringe, as well as additional, empty syringes, a baggie of powder, a piece of paper coated with brown residue, empty baggies, and two digital scales. *Id.* ¶¶ 10–11, 18 (Page ID #198–200); R. 27-1 (Aff. of Compl. Unlawful Possession of Legend Drug) (Page ID #109); R. 34-3 (Preliminary Investigation Rep. at 2) (Page ID #314). We have recognized that these items are "hallmarks" of drug use and dealing.[4] Consequently, the loose syringe on the dash filled with a clear liquid—accompanied by a baggie of white powder and a smorgasbord of common drug paraphernalia—gave Deffendoll probable cause to arrest Alford for simple possession of heroin. *See Codrington v. Dolak*, 142 F.4th 884, 895 (6th Cir. 2025) (holding that officers had probable cause to arrest the plaintiff upon finding a "small amount of marijuana, [a] marijuana grinder, and [a] legal firearm" in his vehicle).

Resisting this conclusion, Alford offers up several unpersuasive arguments. He first argues that the syringe did not supply Deffendoll with probable cause to arrest because a "syringe filled with a clear liquid" does not appear "intrinsically illegal." D. 18 (Appellant Br. at 26, 30). Alford attempts to distill this intrinsic-illegality requirement from *United States v. McLevain*, 310 F.3d 434 (6th Cir. 2002). His reliance on *McLevain* is misplaced. Our analysis in *McLevain* concerned the application of the plain-view doctrine, which permits law enforcement to "seize evidence in plain view without a warrant" under certain conditions. 310 F.3d at 438 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (plurality opinion)). Among other conditions that must be met, "the criminality of a piece of evidence" must be "immediately apparent" to an officer before they may seize it. *Id.* at 441 (quoting *United States v. Beal*, 810 F.2d 574, 576–77 (6th Cir. 1987)). One factor in this analysis is whether the evidence seized appeared "intrinsically incriminating," which Alford latches onto here. *Id.* at 443. In *McLevain*, we held that items such as a twist tie and cigarette filter under a bed, a spoon

---

[4]*See, e.g.*, *United States v. McCoy*, 905 F.3d 409, 419 (6th Cir. 2018) (describing scales and packaging materials as "hallmark[]" drug paraphernalia); *United States v. Sumlin*, 956 F.3d 879, 892 (6th Cir. 2020) (recognizing that "hypodermic needle[s]" constitute "paraphernalia used for the ingestion of drugs like fentanyl and heroin"); *United States v. Burchard*, 580 F.3d 341, 353 n.5 (6th Cir. 2009) (acknowledging that syringes and scales are common drug paraphernalia); *United States v. Stewart*, 306 F.3d 295, 327 (6th Cir. 2002) ("[O]fficers found plastic baggies and scales, items often used in the illegal drug trade . . . .").

with residue on a sink, and an unlabeled prescription bottle filled with clear liquid in a garage were not intrinsically incriminating. *Id.* at 438, 440-43.

The totality of the items found in this case, though, are much more incriminating than the items at issue in *McLevain*. More significant, Alford fails to explain how the plain-view exception to the warrant requirement is relevant to his false-arrest claim. The question for the false-arrest claim is whether the evidence uncovered by the officers gave them probable cause to arrest Alford for simple possession of heroin. It did. Alford's argument appears to be a thinly veiled attempt to have us analyze the evidence Deffendoll recovered from the truck item-by-item. We refuse this invitation. The Supreme Court has declared that "this sort of divide-and-conquer analysis" is antithetical to the "totality-of-the-circumstances test" at the heart of the probable-cause inquiry. *Wesby*, 583 U.S. at 61 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

Next, Alford attempts to analogize his case to *United States v. Helton*, 35 F.4th 511 (6th Cir. 2022). There, officers arrested the defendant near his home and found him in possession of small bills and a "clear baggie" with "residue in it." *Id.* at 520. We held that the loose cash and "wholly unidentified" residue did not support a finding of probable cause to search the defendant's home. *Id.* *Helton*, however, is distinguishable. As described above, Deffendoll unearthed far more than just petty cash and a clear plastic bag with residue before placing Alford under arrest—he discovered a clear liquid inside a syringe accompanied by a plethora of common drug paraphernalia.

Alford further argues that the evidence recovered during the stop singled out Cass as the owner of the contraband materials. D. 18 (Appellant Br. at 33). In support of this argument, Alford avers that "the two residues were . . . found on" Cass. *Id.* We cannot ascertain which residues Alford claims were in Cass's sole possession. The record, however, belies his attempt to pin all the blame on Cass. True, a deputy recovered the glass vial from Cass's person. Deffendoll Cam. 4 at 02:20–02:32. Alford admits, however, that Deffendoll recovered the baggie of powder and the paper with brown residue—as well as all the drug paraphernalia—from inside the truck's cab. R. 32 (Undisputed Facts ¶¶ 11, 18) (Page ID #198–200). A reasonable officer could have concluded that Alford and Cass jointly possessed these items. *See United*

*States v. Williams*, 68 F.4th 304, 311 (6th Cir. 2023) (holding that officers had probable cause to believe that a car's driver and passenger jointly possessed drugs contained in "bags on the back seat"). Fixing our focus, then, on the totality of the circumstances, we have little trouble concluding that Cass's sole possession of *additional* incriminating evidence did not "singl[e] out" Cass "to the exclusion of [Alford]." *See United States v. Montgomery*, 377 F.3d 582, 591 (6th Cir. 2004).

Finally, Alford contends that no reasonable jury could find that he was in joint possession of the baggie of powder. D. 18 (Appellant Br. at 32–34). We need not consider the merits of this argument, however, as Alford failed to present it to the district court. Below, Deffendoll argued in his summary-judgment briefing that the baggie of powder supported probable cause to arrest Alford, *see, e.g.*, R. 28 (Defs.' Mem. of Law in Supp. of Mot. Summ. J. at 9) (Page ID #169), but Alford, in his opposition papers, never urged the district court to exclude the baggie of powder from its analysis, *see generally* R. 33 (Pl.'s Mem. of Law in Opp'n to Summ. J.) (Page ID #205–19). The failure to present this argument to the district court means that Alford has forfeited it. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011–12 (6th Cir. 2022). And because Alford has not identified exceptional reasons for us to consider this argument, we decline to do so. *See id.* at 1013.

Accordingly, we hold that Alford's false-arrest claim against Deffendoll fails at the first step of the qualified-immunity analysis, and we affirm the district court's grant of summary judgment to Deffendoll and Smith on this claim.

## C. Malicious-Prosecution Claim

We next turn to Alford's malicious-prosecution claim against Deffendoll.[5] To make out a Fourth Amendment malicious-prosecution claim, a plaintiff must establish that: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal

---

[5]In his brief, Alford states that he has asserted his malicious-prosecution claim against Cannon County, too. D. 18 (Appellant Br. at 43). Yet he did not present this claim to the district court. *See* R. 33 (Pl.'s Mem. of Law in Opp'n to Summ. J. at 9–11 (Page ID #213–15). Alford has thus forfeited it. *See Bannister*, 49 F.4th at 1011–12.

proceeding was resolved in the plaintiff's favor." *Clark v. Abdallah*, 131 F.4th 432, 453 (6th Cir. 2025) (quoting *Tanner v. Walters*, 98 F.4th 726, 734 (6th Cir. 2024)). In prime focus here is whether Deffendoll had probable cause to charge Alford with simple possession of heroin, possession of drug paraphernalia, and unlawful possession of a legend drug.

The district court did not perform this assessment. Instead, it found that Deffendoll was entitled to qualified immunity by applying its false-arrest probable-cause analysis to Alford's malicious-prosecution claim. *Alford*, 2025 WL 297665, at *9–10. Admittedly, the probable-cause inquiry for both claims often overlaps. *See, e.g.*, *Sykes*, 625 F.3d at 311. But they are not identical. For starters, false-arrest and malicious-prosecution claims require courts to analyze whether probable cause existed at two distinct points in time—the time that the defendant arrested the plaintiff versus the time that the defendant participated in the prosecution. *See id.* at 310–11. In addition, probable cause to arrest for a single offense defeats a false-arrest claim. *Howell*, 148 F.4th at 849. But in the malicious-prosecution context, the Supreme Court has recently clarified that courts must analyze probable cause charge-by-charge. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562–64 (2024). This, the district court failed to do.

Carrying out this claim-by-claim survey, we conclude that Deffendoll had probable cause to charge Alford with simple possession. Because Alford has not identified any evidence that came to light between the time Deffendoll arrested and charged him, the above false-arrest probable-cause analysis applies with equal force to his malicious-prosecution claim. *See Sykes*, 625 F.3d at 311.

Deffendoll also had probable cause to charge Alford with possession of drug paraphernalia. In Tennessee, drug paraphernalia includes:

> [A]ll equipment, products and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance as defined in subdivision (4).

Tenn. Code Ann. § 39-17-402(12). It is a misdemeanor "to use, or to possess with intent to use, drug paraphernalia" for any of the aforementioned illicit purposes. Tenn. Code Ann. § 39-17-

425(a)(1).  Equipped with Deffendoll's knowledge when he charged Alford, a reasonable officer could believe that Alford had intended to use the syringe to inject heroin or use the scales and bags to package drugs.  Thus, Deffendoll had probable cause to charge Alford with possessing drug paraphernalia.

Having eliminated the simple-possession and drug-paraphernalia charges as bases for the malicious-prosecution claim, we need not determine whether Deffendoll had probable cause to charge Alford with unlawful possession of a legend drug in violation of Tennessee Code Annotated § 53-10-101(a).  This is because even if we assume, in Alford's favor, that Deffendoll lacked probable cause to charge Alford with the legend-drug offense, Alford admits that this charge did not cause any seizure.  D. 18 (Appellant Br. at 46).  This concession is fatal.  As the Court acknowledged in *Chiaverini*, "a Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure."  602 U.S. at 564.  To be sure, the Court declined to identify the proper causation test, *id.* at 564–65, and we still have not had the opportunity to do so, *Howell*, 148 F.4th at 853-54.  We discern no need to define the proper causation test here in light of Alford's concession that his seizure was in no way caused by this charge.  We therefore affirm the district court's grant of summary judgment in Deffendoll's favor on the malicious-prosecution claim.

## D.  *Monell* Claim

Finally, Alford asks us to revive his *Monell* claim against Cannon County.  D. 18 (Appellant Br. at 50–54).  In order to subject a municipality to *Monell* liability, a plaintiff must prove that a constitutional deprivation "occurred 'because of a municipal policy or custom.'" *Poynter ex rel. Fernandez v. Bennett*, 162 F.4th 664, 675 (6th Cir. 2025) (quoting *Franklin v. Franklin County*, 115 F.4th 461, 470 (6th Cir. 2024)).  Here, Alford contends that Cannon County violated his violated his Fourth Amendment rights by failing to adequately supervise its deputies.[6]  D. 18 (Appellant Br. at 50–54).  His claim is doomed from the start, however,

---

[6]Although the complaint described two theories of *Monell* liability, R. 1 (Compl. ¶¶ 56–57) (Page ID #9–10), and the district court addressed both theories in its opinion, *Alford*, 2025 WL 297665, at *10–12, Alford addresses only the failure-to-supervise theory in his brief on appeal, D. 18 (Appellant Br. at 50–54).  We accordingly limit our analysis to that theory alone. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th

because he does not identify any Fourth Amendment violations apart from the false-arrest and malicious-prosecution claims that we have already rejected. *Id.* at 50–51. Thus, although "we have held that a municipality can be liable for a constitutional violation 'even in the absence of a showing of a constitutional violation by any one individual,'" this is one of "many cases" where "the lack of a constitutional violation committed by an individual . . . mean[s] there was in fact no constitutional violation." *Poynter*, 162 F.4th at 676 (quoting *Grote v. Kenton County*, 85 F.4th 397, 414 (6th Cir. 2023)). We therefore affirm the district court's grant of summary judgment to Cannon County.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to defendants.

---

Cir. 2018) ("[W]e . . . treat an 'argument' as 'forfeited when it was not raised in the opening brief.'" (quoting *Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008)).